UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA NISBET,<br><br>       Plaintiff,<br><br>v.<br><br>SOUTHERN TIRE MART, LLC,<br><br>       Defendant. | Case No.  5:24-cv-07653-PCP<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 14 |

Plaintiff Joshua Nisbet, a former employee of Southern Tire Mart, filed this putative state-law wage and hour class action in Santa Clara County Superior Court. Southern Tire Mart subsequently removed the case to federal court, asserting that this Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Nisbet moves to remand for lack of subject matter jurisdiction. For the following reasons, the motion is denied.

## BACKGROUND

Nisbet, a former employee of Southern Tire Mart, filed this putative wage and hour class action on behalf of persons employed by Southern Tire Mart in California as non-exempt employees during the four years before the filing of the complaint. He asserts eight causes of action: (1) failure to pay minimum wages in violation of California Labor Code § 1197 and the applicable Industrial Welfare Commission (IWC) Wage Orders; (2) failure to pay overtime wages in violation of California Labor Code § 1194 and the applicable Wage Orders; (3) failure to provide meal periods in violation of California Labor Code §§ 512, 226.7, and the applicable Wage Orders; (4) failure to provide rest periods in violation of California Labor Code §§ 226.7, 516, and the applicable Wage Orders; (5) failure to provide accurate and itemized wage statements in violation of California Labor Code § 226(a); (6) failure to pay compensation upon discharge or resignation in violation of California Labor Code §§ 201, 202; (7) failure to reimburse for

United States District Court<br>Northern District of California

1    necessary business expenditures in violation of California Labor Code § 2802 and the applicable

2    Wage Orders; and (8) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Profs.

3    Code § 17200 *et seq.*

4        Nisbet filed his complaint in Santa Clara County Superior Court. Southern Tire Mart then

5    removed the case to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453. In its notice of

6    removal, Southern Tire Mart asserted that removal was proper under CAFA because the case has

7    more than 100 putative class members, the amount in controversy exceeds $5,000,000, and Nisbet

8    is a citizen of California while Southern Tire Mart is a citizen of Mississippi. Nisbet now moves to

9    remand this case to state court for lack of subject matter jurisdiction.

10                                    **LEGAL STANDARDS**

11        A defendant may remove a case from state court to federal court only if the federal court

12    would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar*

13    *Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have

14    been filed in federal court may be removed to federal court by the defendant."). "If at any time

15    before final judgment it appears that the district court lacks subject matter jurisdiction, the case

16    shall be remanded." 28 U.S.C. § 1447(c).

17        CAFA gives federal courts jurisdiction over class actions where there are at least 100 class

18    members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in

19    controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim*

20    *Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

21        The removing party bears the burden of establishing that CAFA's jurisdictional

22    requirements have been met. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683–685

23    (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). The

24    removing party must file a notice of removal containing a short and plain statement of the grounds

25    for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in

26    controversy exceeds the jurisdictional threshold," *De Vega v. Baxter Healthcare Corp.*, 507 F.

27    Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

28        In determining the amount in controversy, courts first look to the allegations in the

United States District Court
Northern District of California

2

complaint. *Ibarra*, 775 F.3d at 1197. If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). If the amount in controversy alleged by the defendant is contested by the plaintiff or questioned by the court, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 82, 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Defendants are allowed to make reasonable assumptions when calculating the amount in controversy. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). But "[m]ere speculation and conjecture" are insufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also id.* at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them."); *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence."); *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585, 2017 WL 4457228, at *2 (E.D. Cal. Oct. 6, 2017) ("When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable, and not constitute mere speculation and conjecture."). Assumptions can, however, "be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Company*, No. 25-68, 2025 WL 811096, at *3 (9th Cir. Mar. 14, 2025) (cleaned up).

## ANALYSIS

To determine if removal was proper, the Court must assess whether this case meets CAFA's threshold requirements. It is uncontested that two of CAFA's three requirements are met here. Because Nisbet is a citizen of California and Southern Tire Mart is a citizen of Mississippi, and the proposed class consists of at least 571 employees, CAFA's "minimal diversity" and class

1   size requirements are met. The parties disagree, however, about whether the amount in

2   controversy exceeds $5,000,000.

3         Nisbet's complaint does not specify an amount in controversy. In its notice of removal,

4   Southern Tire Mart estimated that the total amount in controversy was $19,822,688.75:

5   $1,782,068.75 for unpaid overtime and minimum wages, $7,128,275 for meal break penalties,

6   $7,128,275 for rest break penalties, $2,064,150 for wage statement penalties, $1,219,920 for

7   waiting time penalties, and $500,000 in attorneys' fees.

8         In its opposition to plaintiffs' motion to remand, Southern Tire Mart submitted a second set

9   of more conservative estimates resulting in a total amount in controversy of $9,081,250.16:

10   $1,247,448.13 for unpaid overtime and minimum wages, $2,851,310 for meal and rest break

11   penalties, $1,990,450 for wage statement penalties, $1,175,760 for waiting time penalties, and

12   $1,816,242.03 in attorneys' fees.

13       **A.**     **Minimum wage and overtime claims**

14         The complaint alleges that "Defendant has consistently failed to accurately record and pay

15   for all time worked …. This included a policy and practice of failing to properly record non-

16   exempt employees' time worked, including all time spent working off the clock. As a result of this

17   company-wide policy/practice, Plaintiff and other non-exempt employees are not compensated for

18   all the hours that they work and all of the overtime hours they work." The complaint also alleges

19   that "employees' meal periods were often interrupted and/or lasted fewer than 30 minutes."

20         Southern Tire Mart calculates that the amount in controversy on the unpaid minimum and

21   overtime wage claims is $1,782,068.75, or, alternatively, $1,247,488.13. In its notice of removal,

22   Southern Tire Mart assumed each employee worked 15 minutes of uncompensated work each shift

23   during the class period. It calculated the amount in controversy using the average hourly wage rate

24   of $23 per hour, although doing so underestimates the amount in controversy on the overtime

25   wages claims because it assumes all unpaid hours were paid at non-overtime rates. In its

26   opposition to the motion to remand, Southern Tire Mart revised its estimate, assuming 6 minutes

27   of unpaid work per shift at non-overtime rates and an additional 3 minutes at overtime rates. It

28   based its assumptions on the language in the complaint alleging that Southern Tire Mart

United States District Court
Northern District of California

4

"consistently" failed to accurately record and pay for time worked and that meal periods were "often" interrupted.

Plaintiffs aver that Southern Tire Mart's assumptions are unreasonable because they are not supported by evidence. But evidence is not required to prove the reasonableness of an assumed violation rate. As the Ninth Circuit recently explained,

> What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number …. By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate … because the defendant likely believes that the real rate is zero and thus that the evidence does not exist.

*Perez v. Rose Hills Company*, 2025 WL 811096, at *3. A defendant is thus allowed to make reasonable assumptions based on the language of the complaint. "[I]f [plaintiffs] believe[] that some other assumption would have been *more* reasonable, [they are] free to propose that rate." *Id.* at *5. Plaintiffs are "free to use some more specific phrase … when drafting the complaint" and thus "constrain[] the range of assumptions" that defendants can reasonably adopt. *Id.* at *5. Here, plaintiffs chose not to do so.

Southern Tire Mart's explanation of its reasoning is undoubtedly thin, and its reliance on *Velasco v. HSS California, Inc.*, No. 24-CV-03769-LB, 2024 WL 4216485 (N.D. Cal. Sept. 16, 2024), for its assumed violation rates is unpersuasive, given that the specific allegations that gave rise to the assumption of 6 minutes of unpaid work at the minimum wage rate and 3 minutes at the overtime rate in that case differed from the specific allegations here. But Southern Tire Mart's assumed minimum wage and overtime violation rates are nonetheless reasonable. The complaint alleges that Southern Tire Mart "consistently failed to accurately record and pay for all time worked." "Consistently" indicates, at the very least, that minimum wage and overtime violations were regular, frequent, or common occurrences. *See Vasquez v. Randstad US, L.P.*, No. 17-CV-04342-EMC, 2018 WL 327451, at *3 (N.D. Cal. Jan. 9, 2018) ("[T]he dictionary defines 'consistent' as 'marked by harmony, regularity or steady continuity: free from variation or

contradiction,' and 'showing steady conformity to character, profession, belief, or custom.' … In light of the dictionary definitions, Defendants' interpretation of 'consistent' as something akin to 'universal' or 'always' is reasonable."). An average of 6 minutes and 3 minutes of unpaid work per shift at the non-overtime and overtime rates, respectively, is equivalent to an average of 18 minutes of unpaid work at the non-overtime rate every 3 days, and 30 minutes of unpaid work at the overtime rate every 10 days. In the absence of more limiting language in the complaint, that assumption is reasonable given the "consistent" practice alleged.

Further, Southern Tire Mart's estimated amount in controversy is so far above the CAFA threshold that even reducing the amount in controversy on the unpaid minimum wage and overtime claims by half, from $1,247,448.13 to $623,724.06—a reduction that reflects a violation rate below what reasonably can be assumed based on the language of the complaint—keeps the total amount in controversy above $5,000,000.

### B.    Meal and rest break claims

The complaint alleges that

> Plaintiff and other non-exempt employees were denied compliant and timely 30-minute off-duty meal periods as mandated by California law. Due to Defendant's uniform meal period policies/practices, operational requirements, and work demands, Plaintiff and other non-exempt employees often could not take timely and uninterrupted net 30-minute first meal periods before the end of the fifth hour of work. Further, when Plaintiff and other non-exempt employees worked more than 10.0 hours in a shift, they were not allowed and permitted to take a mandated second meal period before the end of the tenth hour of work in violation of the Labor Code and applicable Wage Orders. Indeed, Plaintiff's and other non-exempt employees' meal periods were often interrupted and/or lasted fewer than 30 minutes due to Defendant's meal period policies/procedures, operational requirements, and work demands.

Regarding rest breaks, the complaint alleges that

> Plaintiff and other non-exempt employees were not provided with all 10-minute rest periods for every four hours worked, or a major fraction thereof, due to Defendant's uniform rest period policies/practices, operational requirements and work demands. As a result, Plaintiff and other non-exempt employees were and are often unable to take a net 10-minute duty-free rest period for every major

United States District Court
Northern District of California

fraction of four hours worked. This includes a second rest period for shifts in excess of six hours and a third rest period for shifts in excess of 10.0 hours in a workday.

Initially, Southern Tire Mart assumed a 100% violation rate for both meal and rest break claims, estimating the amount in controversy on each as $7,128,275.004. In its opposition, it assumed a violation rate of 20% based on the use of "often" in the complaint, which it claims indicates frequency of at least 20%. Using this assumed violation rate, it calculates the amount in controversy on the meal and rest period claims as $1,425,655 each.

Plaintiffs contend that even 20% is an unreasonable violation rate to assume because it is unsupported by "evidentiary support in the record." But, as *Perez* explained, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate." 2025 WL 811096, at *3. Given plaintiffs' allegations of a "consistent policy" that led class members to "often" experience meal and rest period violations, Southern Tire Mart's assumed violation rate is reasonable.

**C.    Wage statement claims**

The complaint alleges violations of California Labor Code § 226, which provides that employers who fail to provide employees with "an accurate itemized [wage] statement" are subject to fines. Wage statement claims under California Labor Code § 226 may be derivative of other claimed violations of the California Labor Code. For example, an employer that fails to compensate an employee for time worked will almost certainly also fail to include that time in the corresponding wage statement. Plaintiffs thus may be entitled to recover penalties for wage statement violations if an underlying labor code violation alleged by plaintiffs occurred within a given pay period.

Southern Tire Mart estimates the amount in controversy for plaintiffs' wage statement claims based on its assumed violation rates for the underlying wage and hour claims. Assuming that one pay period, which is one week, consists of five shifts, and using its more conservative estimates of the violation rates for the underlying offenses, Southern Tire Mart calculates that the probability of any employee working a pay period with zero violations is 3.518%. By multiplying a 96.482% violation rate by the 20,297 pay periods it claims occurred within the one-year statute

7

of limitations, it calculates that the amount in controversy for wage statement violations is $1,990,450.

Plaintiffs' challenge to Southern Tire Mart's estimate is largely based on their disagreement with its assumed violation rates for the underlying labor code violations. Given that Southern Tire Mart's assumed violation rates are reasonable, it is reasonable to use those violation rates to calculate the amount in controversy for wage statement violations.

**D.     Waiting time claims**

Plaintiffs seek to recover waiting time penalties pursuant to California Labor Code §§ 201, 202, and 203 for terminated employees that were not paid all timely wages upon discharge. Based on its own employment records, Southern Tire Mart estimates that there were approximately 221 hourly employees terminated during the three-year statute of limitations period. Given that waiting time penalties only require a single labor code violation at any point during a terminated employee's entire tenure, Southern Tire Mart argues that the allegations in the complaint, which justify assuming at least a 20% underlying violation rate, make the probability of an employee not experiencing any labor code violations during their employment with Southern Tire Mart "vanishingly small." Using its estimate that the probability of an employee experiencing a labor code violation in a given week is 96.482%, Southern Tire Mart calculates that even using "the absurdly conservative assumption that each terminated employee only worked five shifts," the amount in controversy on waiting time penalties would be $1,175,760.

Even if Southern Tire Mart's estimated violation rate is reasonable, plaintiffs contend that it grossly overestimates the penalties in controversy. Penalties are calculated as one day's pay for each day after termination that wages remain unpaid, up to a maximum of 30 days. Southern Tire Mart's calculations assume that each employee entitled to waiting time penalties worked 8 hours per day, at the average rate of $23 per hour, and is entitled to the full 30-day waiting time penalties.

Southern Tire Mart's assumption that employees entitled to waiting time penalties are entitled to the full 30-day penalty is reasonable. The foundational premise of the complaint is that class members have still not been paid the full wages due, and given that Southern Tire Mart's

8

calculations are more than 30 days old, the terminated employees whom it counted in those calculations were all terminated more than 30 days ago. It would make little sense for Southern Tire Mart to assume less than the maximum waiting time penalty for each such employee. The assumption that the terminated employees all worked eight hours per day, however, is not reasonable. In this case, Southern Tire Mart has access to the records that would allow it to readily determine the terminated employees' average shift length, and it should not substitute an assumption for data when that data is easily accessible to it. The complaint alleges that "[p]laintiff and other non-exempt employees regularly worked various shifts, many of which were more than 8.0 hours in a workday and 40.0 hours in a workweek." "Many of which" suggests that not all shifts were more than 8 hours, but that at least the majority were.

An excessively conservative interpretation of the language in the complaint would therefore cut the estimated amount in controversy on waiting time penalties by half, from $1,175,760 to $587,880. Even after reducing Southern Tire Mart's estimate in this manner, the total amount in controversy nonetheless remains above the CAFA threshold.

### E.    Attorneys' fees

Initially, Southern Tire Mart included in its calculation of the amount in controversy $500,000 in attorneys' fees, based on the fact that "[a]ttorneys' fees awards in California wage and hour class actions can total hundreds of thousands of dollars or more." In its opposition, it raises that estimate to 25% of the total amount in controversy on plaintiffs' underlying claims— $1,816,242.03. It derives that rate from the Ninth Circuit's benchmark for attorneys' fees awards in common fund cases.

As this Court recently explained in *Lopez v. Advanced Drainage Systems, Inc.*, "[t]he problem with this approach is that any award of attorneys' fees in this case would be made pursuant to California's fee-shifting statutes and paid separately by the defendant, not awarded from a common fund." No. 5:24-CV-07582, 2025 WL 1088199, at *5 (N.D. Cal. Apr. 11, 2025); *see also Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018) (rejecting the argument that attorneys' fees in wage and hour class actions should be estimated at 25% by applying the Ninth Circuit's benchmark for common fund cases). "[W]hile using the 25%

9

benchmark might make for a straight-forward calculation, it comes from a very different context." *Gurzenski v. Delta Air Lines, Inc.*, No. 221CV05959, 2021 WL 5299240, at \*5 (C.D. Cal. Nov. 12, 2021). "[I]t makes sense to estimate the attorneys' fee for amount-in-controversy purposes *in the same manner* that it would be calculated under the fee-shifting statute upon a noticed motion for fees at the close of litigation." *Id.*

Southern Tire Mart's alternative estimate of $500,000 is also unreasonable because it is untethered to the specific allegations in the complaint and derived solely from other wage and hour class actions. While other cases may offer useful analyses of why particular language in a complaint makes certain assumptions reasonable, borrowing calculations from those cases without connecting them to the specific allegations in the complaint here amounts to unreasonably "pull[ing] [assumptions] from thin air." *Ibarra*, 775 F.3d at 1199.

Ultimately, however, the unreasonableness of Southern Tire Mart's attorneys' fees estimate does not matter because even if the Court excludes attorneys' fees entirely from Southern Tire Mart's estimate of the amount in controversy, the amount remains significantly above the CAFA threshold.

### F.    Summary

Southern Tire Mart's estimate of the amount in controversy, based on the more conservative assumptions it proposes in its opposition to the motion to remand, is $9,081,250.16: $1,247,448.13 for unpaid overtime and minimum wages, $2,851,310 for meal and rest break penalties, $1,990,450 for wage statement penalties, $1,175,760 for waiting time penalties, and $1,816,242.03 in attorneys' fees. If the Court assumes even more conservative violation rates, reducing the estimated amount in controversy for the overtime, minimum wage, and waiting time claims by half, and excludes attorneys' fees all together, the amount in controversy is $6,053,404.07, which exceeds the CAFA threshold of $5,000,000. Southern Tire Mart has thus met its burden of establishing by a preponderance of the evidence that CAFA's amount-in-controversy requirement is met and this Court has jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion to remand.

**IT IS SO ORDERED.**

Dated: April 16, 2025

P. Casey Pitts
United States District Judge